871 P.2d 1172

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Laura Estay, a judge thereof, Respondent Judge,**

**and**

**BABY BOY T, I; Baby Boy T, II; Baby Boy B; Baby Boy C; and attorney Paul Theut, Real Parties in Interest.**

No. 1 CA–SA 94–0033.

Court of Appeals of Arizona, Division 1, Department E.

April 5, 1994.

Grant Woods, Arizona Atty. Gen. by Aimee L. Burr, Asst. Atty. Gen., Phoenix, for petitioner.

Theut, Theut & Theut, P.C. by Paul J. Theut and Brian J. Theut, Phoenix, for real parties in interest.

## OPINION

NOYES, Judge.

Arizona Department of Economic Security ("DES") filed this special action to obtain a declaration that the juvenile court cannot order DES substituted as the petitioner in a dependency action filed by a private party, even when DES recommends that the court find the children dependent. We accept jurisdiction because the issue is important to the effective administration of justice in the juvenile court and because the parties have no equally plain, speedy, and adequate remedy by appeal. *See* Ariz.R.P. Special Actions 1(a). For the reasons set forth below, we deny relief.

### I.

This dependency action involves four boys, aged 11 years, 10 years, 18 months, and 7 months. These children have the same mother, but each has a different father, and none of the fathers is married to or living with the mother. This family first came to the attention of the juvenile court through

delinquency proceedings involving the two older boys. The juvenile court appointed Mr. Paul J. Theut, an attorney in private practice in Phoenix, as guardian ad litem for one of the delinquents. Mr. Theut soon discovered that the mother also had the two baby boys, that she was an apparent drug addict who could not care for her children, that the 18-month-old was missing from the home, and that the older children were basically unsupervised and uncared-for, although receiving some shelter and care from various relatives.

Mr. Theut asked the DES caseworker whether these children were dependent.[1] The caseworker said that the children were dependent but that DES had not filed a dependency petition because her supervisor did not think the children were dependent. On October 1, 1993, Mr. Theut and several other parties, including a different DES caseworker, were in court on a review of status hearing for the two older boys in their delinquency actions. At that time, Mr. Theut advised the court of the existence of the two babies and the apparent dependency and dire straits of all four children.

The court then appointed Mr. Theut as guardian ad litem for all four children and further provided that it was "authorizing Mr. Theut to file a dependency petition on behalf of the children within 48 hours, excluding weekends and holidays." The court placed the older boys in the temporary physical custody of relatives and ordered that DES "immediately pick up [the two babies] and that these children be placed in the physical care, custody and control of [DES] and that the children be in [DES] custody within one hour after the hearing is completed, if the children can be located." The court also ordered DES to "investigate the living conditions of the children upon picking them up and submit at least a verbal report to Mr. Theut regarding the results."

On October 4, 1993, Mr. Theut filed a dependency petition for the four children. At the initial dependency hearing on October 20, 1993, the court continued the matter to allow Mr. Theut to amend the petition to name all "potential natural fathers," and to try to find and serve all "interested parties." The court also ordered that the children continue as temporary wards of the court committed to the care, custody, and control of DES.

At the continued dependency hearing on December 1, 1993, one of the fathers had been served and was present, but the whereabouts of the 18-month-old and two of the fathers was still unknown. The mother, who was present with her court-appointed attorney, denied that there was a dependency. The DES caseworker had by this time filed a written report in which DES recommended that all four children be found dependent and made wards of the court committed to the care, custody, and control of DES.

The court then asked the assistant attorney general the question that led to this special action:

> COURT: ... This file has grown real fast, but why is DES not substituted.
>
> MS. BURR: Your Honor, at this time because there is, because Mr. Theut has filed the petition for dependency, and the State of Arizona does not fall within Rule 25 of the rules of civil procedure as appropriate party to substitute....

---

1. Both A.R.S. section 8-201(11) (Supp.1993) and A.R.S. section 8-546(4) (Supp.1993) provide that:

"Dependent child" means a child who is adjudicated to be:

(a) In need of proper and effective parental care and control and has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control.

(b) Destitute or who is not provided with the necessities of life, including adequate food, clothing, shelter or medical care, or whose home is unfit for him by reason of abuse, neglect, cruelty or depravity by either of his parents, his guardian, or other person having his custody and care.

(c) Under the age of eight years who is found to have committed an act that would result in adjudication as a delinquent or incorrigible child if committed by an older child. *See also* A.R.S. section 46-101(5) (Supp.1993) for a similar definition of "dependent child" in the context of statutes relating to public welfare.

COURT: But you're requesting that the children be made wards of the court committed to the care, custody, and control of [DES].

MS. BURR: We recommend, we feel that there is a possible dependency here; however, we don't feel that DES should be substituted in as party petitioner at this time.

The court explained that: "[T]his is a classic dependency. I have a [DES] caseworker who agrees. We're basically spending [County] money on an attorney to do the work of the [State] agency that is mandated by law." Mr. Theut then requested that DES be substituted as the petitioner in the dependency proceeding. When DES objected, the court set a "contested hearing" for the following day, December 2, 1993.

At the next day's hearing, Mr. Theut moved for substitution of counsel. The court questioned both Mr. Theut and Ms. Burr. As a summary of their respective positions, we provide one statement made by each attorney to the court:

MS. BURR: .... We will cooperate with [Mr. Theut] at all costs through the matter of this dependency action. We'll supply services to mother, to the fathers, to the children. We'll assist Mr. Theut in bringing this matter to trial. We'll assist in subpoenaing witnesses. But we don't feel that it should be the burden of [DES] to bring this matter to trial.

. . . .

MR. THEUT: .... I feel it's their job to come forward and relieve private petitioners, especially this type of a case where it was an emergency petition. These children needed emergency care. We had no action from the State at all, and at this point I don't think they are not [sic] opposing this petition. They have the resources. We need the State's action, not inaction here. And for them to not agree to substitution of counsel I feel is wrong.

The court then ordered DES substituted as the petitioner in the dependency action. This order meant that the attorney general's office would be substituted for Mr. Theut as counsel for petitioner.[2] DES requested a stay pending this special action. The court denied the request for stay, finding that "[a] delay would unnecessarily prolong [the] action and the children's continued removal from their home." We have jurisdiction pursuant to A.R.S. section 12–120.21(A)(4) (1992).

## II.

■ The primary consideration in a dependency case is always the best interest of the child. *Cochise County Juvenile Action No. 5666–J*, 133 Ariz. 157, 161, 650 P.2d 459, 463 (1982). Accordingly, the juvenile court is vested with "a great deal of discretion." *Id.* at 160, 650 P.2d at 462.

This Court previously has held that a dependency petition can be filed by a party other than DES. *See Pima County Juvenile Dependency Action No. 98874*, 161 Ariz. 231, 232, 778 P.2d 266, 267 (App.1989) ("In contrast to delinquency and severance matters, nothing in the statutes or rules governing dependency proceedings sets forth or limits in any way who may be a party to such a proceeding."). DES does not quarrel with the proposition that someone other than DES can file a dependency petition, but DES now argues that there is no constitutional, statutory, or common law authority that enables the juvenile court to order the substitution of DES as petitioner in a dependency proceeding. According to DES, the issue is controlled by Rule 25, Arizona Rules of Civil Procedure, which pertains to substitution of parties. DES argues that none of the grounds for substitution of parties specified in Rule 25 are present and that, therefore, the court could not order the substitution of DES as petitioner in this case. Mr. Theut contends that the applicable rule of civil pro-

---

**2.** A.R.S. section 46–133(A) (1988) provides: "The attorney general shall be the legal adviser of [DES]." A.R.S. section 46–133(B) (1988) provides: "The attorney general shall prosecute and defend in the name of the state all actions necessary to enforce the provisions of [Title 46, pertaining to public welfare]."

cedure is Rule 17, pertaining to designation and appointment of real parties in interest.

■ We find Rule 17 more relevant than Rule 25, but we do not agree that the issue should be decided solely by reference to the Arizona Rules of Civil Procedure. Although dependency hearings are to be conducted "in a manner similar to the trial of a civil action before the court sitting without a jury," R.P.Juv.Ct. 16.1(b), "the juvenile justice system is unique, having its own purpose and procedure," *Maricopa County Juvenile Action No. J–81405–S*, 122 Ariz. 279, 280, 594 P.2d 533, 534 (App.1978), *vacated on other grounds*, 122 Ariz. 252, 594 P.2d 506 (1979). By constitution and statute, the juvenile court has exclusive original jurisdiction over most matters involving juveniles. *See* Ariz. Const. art. 6, § 15; A.R.S. § 8–202 (1989). There are special rules of procedure for the juvenile court. *See* R.P.Juv.Ct. 1.

■ There is also a special relationship between DES and allegedly dependent children. *See generally* A.R.S. § 8–503 (1989) (providing DES' powers and duties regarding child welfare and placement). No matter who files a dependency petition, the petition seeks state intervention in the parent-child relationship.

> This state recognizes that children are not property of their parents whose control may only be interrupted by a finding of fault; on the contrary, Arizona recognizes that children as persons have special needs and rights which are protected by law. One of those rights is the right to effective and proper parental control and care. If a child is found to be without such parental care and control and without parents willing or capable of exercising such care and control, the child is a dependent child entitled to have such care and control furnished through the state.

*Maricopa County Juvenile Action No. J–75482*, 111 Ariz. 588, 590–91, 536 P.2d 197, 199–200 (1975). Because DES is the state agency responsible for the welfare of children, DES is required to fully investigate all complaints of alleged dependency. *See* A.R.S. § 8–224(B) (1989). DES is responsible for the disposition of allegedly delinquent children unless the matter requires court intervention. *Id.* If court intervention is required, it is initiated by the filing of a dependency petition, usually by DES. *See* A.R.S. § 8–546.02(B) (1989). When a dependency petition is filed by anyone, DES must investigate the allegations and provide the juvenile court with a written report of its investigation. A.R.S. § 8–546.01(C)(7)(b) (1989).

■ A child whom the court finds to be dependent is made a ward of the court. *See* A.R.S. § 8–246 (Supp.1993). Disposition alternatives available to the court regarding dependent children are set forth in A.R.S. § 8–241(A)(1) (Supp.1993). We do not need to discuss all those alternatives here. For the purposes of the issue in this case, it suffices to state generally that DES is the agency to whom the law entrusts responsibility for the care, custody, and control of dependent children. *See generally* A.R.S. § 8–503 et seq. Because DES is the state agency to which these responsibilities are entrusted by law, DES is an interested and necessary party in any dependency action.

■ Although no law specifically provides for the substitution of DES in a dependency proceeding, the absence of an express grant of authority will not preclude the court from entering orders "essential to the due administration of justice." *State ex rel. Polley v. Superior Ct.*, 81 Ariz. 127, 130, 302 P.2d 263, 265 (1956); *see also Owen v. City Court of Tucson*, 123 Ariz. 267, 268, 599 P.2d 223, 224 (1979) (recognizing "inherent powers" as "indispensable if a court is to perform the duties specifically assigned to it"); *Pima County Juvenile Action No. J–36723–1 v. Superior Ct.*, 114 Ariz. 400, 401, 561 P.2d 321, 322 (App.1976) (recognizing court's inherent power to order a juvenile to divulge the names and addresses of alibi witnesses). This Court previously has observed: "In filing a dependency petition, DES exercises the responsibility conferred upon the state to pre-

vent dependency, abuse and exploitation of children." *Pima County Juvenile Dependency Action No. 97247,* 158 Ariz. 55, 57, 760 P.2d 1104, 1106 (App.1988); *see also Pima County Juvenile Action No. J–77188,* 139 Ariz. 389, 392, 678 P.2d 970, 973 (App.1984) (citing A.R.S. § 8–546(A)(5)). That same reasoning extends to situations in which the court requests that DES substitute as petitioner in a dependency action when DES recommends that the court find the child to be dependent.

The inherent powers of the superior court regarding substitution of parties in matters involving children are underscored by Rule 17(g), Arizona Rules of Civil Procedure, which provides, in part: "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or *shall make such other order as it deems proper for the protection of the infant* or incompetent person." Ariz. R.Civ.P. 17(g) (emphasis added). The inherent powers of the juvenile court regarding substitution of parties are also underscored by Rule 1, Rules of Procedure for the Juvenile Court, which provides, in part: "Wherever in these rules reference is made to a party to the action it means the child, parents, guardian, custodian, or *any other person whose presence in the action is required in the interests of justice or [who is] designated by the court as a party.*" R.P.Juv.Ct. 1 (emphasis added); *see also* R.P.Juv.Ct. 15(a) (providing for service of a dependency petition upon any "person whose presence in the action is required in the interests of justice or who is designated by the court as a party").

In its Petition for Special Action, DES argues, in part, that its duties are limited to those provided by statute, as follows:

> ADES is a State agency created by statute. *See* A.R.S. § 41–1951 et. seq. The general powers and duties of the Arizona Department of Economic Security are delineated in A.R.S. § 46–134. With respect to child welfare, its relevant portions state that, "The State department shall:

> 2. Administer child welfare activities." and

> 13. Administer any additional welfare functions required by law."

DES fails to cite another subsection that is also relevant. Subsection 8 of the statute provides that DES has a duty to "[c]ooperate with the superior court in cases of delinquency and related problems." A.R.S. § 46–134(8) (Supp.1993).

Although DES has expressed and given much cooperation in this case, it has not cooperated with the juvenile court's request that DES substitute as petitioner. Instead, DES asks this Court for a ruling that would give DES the power to, in effect, force the juvenile court to pay private attorneys with county funds to provide legal services for children that the state is responsible for providing with its own attorneys. The agency cannot so delegate its responsibilities regarding dependent children. We hold that the juvenile court has the authority to order DES substituted as petitioner in a dependency action in which DES recommends that the court find the children to be dependent. *Cf. Pima County Juvenile Action No. J–36723–1,* 114 Ariz. at 401, 561 P.2d at 322 ("The juvenile court here was exercising its inherent power predicated on the requirements for the due administration of justice.").

We presume the expertise and good faith of all concerned in this case, and we also presume that there are significant budget and caseload pressures on all courts and agencies with responsibility regarding dependent and/or delinquent children. It is in the best interests of those children, however, that the budget and caseload pressures inspire *more* court and agency cooperation, not less. "[A] child is entitled to have his or her basic needs cared for. If the parent fails to furnish these needs, the state may and should act on behalf of the child." *Cochise County Juvenile Action No. 5666–J,* 133 Ariz. at 161, 650 P.2d at 463.

## III.

The juvenile court did not err in ordering DES substituted as petitioner in this case.

The request by DES for relief from that order is denied.

JACOBSON, P.J., and FIDEL, J., concur.